**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| WHOOP, INC., | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SERINITY GROUP (d/b/a AURORA), | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff WHOOP, Inc. ("Plaintiff" or "WHOOP"), by and through its counsel, brings this Complaint against Serinity Group (d/b/a Aurora) ("Defendant" or "Aurora") and alleges and states as follows:

## INTRODUCTION

1.     Since its founding over a decade ago, WHOOP has been on the cutting edge of collecting biometric information through a wearable device that is then used by WHOOP to provide its users with insights into their physiology that can help unlock their full potential.

2.     From its first commercial release, the wearable has featured a revolutionary appearance that flew in the face of conventional fitness trackers and gave it a distinct and highly recognizable aesthetic.  Over the past decade, that unique aesthetic has developed into iconic trade dress, making the WHOOP wearable instantly recognizable to consumers:

1



3.     Seeking to trade off the goodwill that WHOOP has developed over the past decade, as well as the unique association between the well-known WHOOP trade dress and the popular WHOOP wearable, Defendant recently released a health monitoring device that makes unauthorized use of the WHOOP trade dress, despite knowledge that WHOOP owns and exclusively uses the trade dress.  Defendant continued to sell the infringing products in the United States, even after being put on express notice of its violation of WHOOP intellectual property. Images of a WHOOP device featuring the trade dress next to Defendant's infringing product leave no doubt that this infringement is a willful attempt to misappropriate WHOOP intellectual property to offer an inferior and misleading product:

| WHOOP Product Featuring the WHOOP Trade Dress | Representative Example of Aurora's Infringing Product |
|---|---|
|  | |

4.     Plaintiff seeks damages and injunctive relief for trade dress infringement, false designation of origin, and unfair competition by Aurora in violation of the laws of the United States and the Commonwealth of Massachusetts.

## PARTIES

5.     Plaintiff WHOOP, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at One Kenmore Square, Suite 601, Boston, Massachusetts 02215.

6.     Upon information and belief, Defendant Serinity Group d/b/a Aurora is a company organized and existing under the laws of France with a principal place of business at 19 Rue de la Félicité, 75017 Paris, France.

## JURISDICTION AND VENUE

7.     This action arises under federal law, state law, and common law.  The federal law claims are federal trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).  The state and common law claims are unfair competition in violation of Massachusetts statutory law (Mass. Gen. L. ch. 93A §§ 2, 11) and common law.

8.     This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1138(a)-(b) (trade dress, false designation of origin, and unfair competition), and 15 U.S.C. § 1121 (Lanham Act).

9.     This Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendant Aurora pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, Aurora is not

subject to jurisdiction in any state's courts of general jurisdiction, and this exercise of jurisdiction comports with due process.

11.     Aurora has continuous and systematic contacts and minimum contacts with the entire United States that give rise to Aurora's infringement, including expressly targeting the United States as a market for its infringing products.

12.     Upon information and belief, Aurora sells products in the United States via its website.

13.     Upon information and belief, Aurora has targeted sales to United States residents, including Massachusetts residents.

14.     Aurora has purposefully availed itself of the privileges of conducting activities in the United States and invoked the benefits and protections of the United States' laws, including by selling products into the United States, including to consumers in Massachusetts.  Accordingly, jurisdiction in this forum is proper.

15.     Venue is proper in this District under 28 U.S.C. § 1391.

## THE WHOOP TRADE DRESS

16.     Since its founding in 2012, WHOOP has expended considerable time and effort developing premium hardware, software, and analytics to unlock human performance and monitor health.

17.     As a result of the tireless efforts of WHOOP product developers and engineers, the WHOOP physiological monitoring device (the "WHOOP Wearable") has established a reputation as an industry leader in health monitoring devices.

18.     The initial product released by WHOOP was a wearable optimization system designed for elite athletes and teams, to help them perform at their highest levels by gaining greater

visibility into their bodies' needs, but WHOOP has expanded its target consumers to include all general consumers, including general consumers interested in health and wellness.

19.     The WHOOP Wearable allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance.

20.     Since at least as early as 2015, when WHOOP released the first commercial version of the WHOOP Wearable, the WHOOP Wearable has born distinctive features designed to differentiate it from competitor products.

21.     Specifically, the overall appearance of the WHOOP Wearable, in all of its iterations over the past decade, includes at least the following features, the combination of which create a non-functional and distinctive trade dress: a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device, an example of which is shown below (the "WHOOP Trade Dress").



22.     Since 2015, WHOOP has continuously used the WHOOP Trade Dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from WHOOP. Beginning with the launch of its first wearable, WHOOP has had exclusive use of the WHOOP Trade Dress in the marketplace, which has assured consumers that wearables featuring the WHOOP Trade Dress are authentic WHOOP products.

23.    This unique faceless design with the continuous fabric band and thin metal accents was revolutionary to the health tracking wearables industry, which was previously dominated by wearable devices with increasingly elaborate displays.  It was also recognized for its innovation and distinctive aesthetics.  For example, WHOOP won the Red Dot Award: Product Design 2016, one of the largest and most prestigious international product design awards in the world, for the innovative design of the WHOOP Wearable.

24.    The WHOOP Trade Dress is not functional.  The design features embodied by the WHOOP Trade Dress are not essential to the function of the wearable device, do not make the device cheaper or easier to manufacture, and do not affect the quality of the device.  The design embodied by the WHOOP Trade Dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the WHOOP Trade Dress.  Indeed, several other providers of wearable health monitoring devices offer products that do not feature the WHOOP Trade Dress, representative examples of which are shown below (offered by Apple, Fitbit, Pavlok, and Garmin, respectively).



25.    The features of the WHOOP Trade Dress serve to render the WHOOP Wearable, the embodiment of the WHOOP Trade Dress, as a distinct product originating solely from WHOOP.

26.     The WHOOP Wearable has been commercially successful, has received a large volume of unsolicited media attention, and has been featured in many popular publications nationwide and internationally.

27.     As a result of long and exclusive use, sales, advertising, and third-party recognition, the WHOOP Trade Dress is widely and instantly recognizable for its unique design and is associated with one source, namely, WHOOP.

28.     WHOOP owns a pending federal application for one embodiment of the WHOOP Trade Dress (App. Serial No. 99/080,005) for use in connection with "Health monitoring devices for capturing and transmitting physiological metrics to be available on an online analytic system; Wearable heart rate monitors" in International Class 10 (the "Application").  As described in the Application, the trade dress for which WHOOP has filed its application includes:

> [A] three-dimensional configuration of a wearable device comprised of a U-shaped clasp on which the word WHOOP appears on a crossbar, with sides that hinge distally from the crossbar into a rectangular sensor device (not visible) and allow the clasp to open and close into place over the sensor device. The strap is the band which connects to the sensor device on one end and the crossbar on the other and, when closed, wraps around the entire design and lays flat over the sensor device and snug on the wrist of the wearer. The word WHOOP and the edging detail on the side of the wearable device, both featured in broken lines, are not claimed as part of the mark[.]



29.    WHOOP has invested substantial time, money, and effort to advertise and promote the WHOOP Wearable and the WHOOP Trade Dress in the United States and around the world through virtually every available type of media, including print publications, television, and the Internet (e.g., via its own website, banner ads, and social media, including Facebook, Twitter, Instagram, TikTok, Pinterest, and LinkedIn).  WHOOP prominently displays the WHOOP Trade Dress on its website and in all of its marketing materials.  By virtue of its efforts, WHOOP has developed substantial recognition and goodwill in its unique and distinctive WHOOP Trade Dress.

30.    The public's association of the WHOOP Trade Dress with WHOOP has been enhanced by advertisement of the WHOOP Wearable that prominently features the WHOOP Trade Dress and encourages consumers to identify the WHOOP Wearable by the WHOOP Trade Dress (e.g., "Is your crush wearing a WHOOP?").  Exemplary advertisements are reproduced below.



Ex. D.

31.    WHOOP also promotes the WHOOP Wearable in connection with the WHOOP Trade Dress throughout the United States through partnerships with well-known individuals, professional sports associations, college sports teams, and industry partners.  For example, WHOOP has partnered with celebrities, such as global music icon Niall Horan, organizations, such as the Professional Golf Association (PGA) and the National Football League (NFL), Warner Bros.

Discovery, and Notre Dame Athletics, and professional athletes, such as Patrick Mahomes (football), Cristiano Ronaldo (soccer), Michael Phelps (swimming), and Aryna Sabalenka (tennis), among many others.

32.    As a result of the widespread use and display of the WHOOP Trade Dress exclusively by WHOOP in association with its wearable device, (a) the public has come to recognize and identify the products bearing the WHOOP Trade Dress as emanating from WHOOP, (b) the public recognizes that products bearing the WHOOP Trade Dress constitute high-quality products that conform to the specifications created by WHOOP, and (c) the WHOOP Trade Dress has established strong secondary meaning and extensive goodwill.

33.    In addition to substantial advertising and promotional activities conducted by WHOOP, the WHOOP Wearable has received and continues to receive widespread unsolicited media coverage and attention, including in industry publications and general third-party articles, press releases, and videos with worldwide distribution.  For example, the WHOOP Wearable, along with pictures showing the WHOOP Trade Dress, has appeared in *Forbes*, *Sports Illustrated*, *The New York Times*, *Good Housekeeping*, *Conde Nast Traveler*, *Cosmopolitan*, and *People*, among countless other publications in print and online.

34.    Indeed, it is routine for articles to identify users of the WHOOP Wearable solely through images from afar based on the distinctive WHOOP Trade Dress.  For example, in an article published by *People* on July 10, 2024, the author reports that Prince William wore a WHOOP Wearable at the UEFA EURO quarterfinals, along with a picture of the device, as shown in the excerpt below.  Ex. G.



The apparent WHOOP band was visible on Prince William's right wrist when he touched his temples and leaped from his seat during the close game. The teams tied 1-1 before England advanced through a penalty shootout.

Prince William cheers at the end of the UEFA EURO 2024 quarter-final match between England and Switzerland in Dusseldorf, Germany on July 6, 2024.
Credit: Gokhan Balci/Anadolu via Getty

35.     In a separate article reporting on Prince William wearing a WHOOP Wearable, the author identifies the WHOOP Wearable at a distance based on the distinctive design, shown in the images below: "To the untrained eye this might have just looked like a black canvas band wrapped around his wrist. But fit and athletically gifted people, such as me, instantly recognize it as the It fitness accessory worn by Michael Phelps, Tiger Woods, Rory McIlroy and the like." Ex. G.  The author further comments on the instant recognizability of the design: "When you start using Whoop, you get high on the silent respect that comes from fellow wearers when they get a flash of your wrist." *Id.*



Prince William was seen wearing a Whoop device while watching England v Switzerland at the Euros

REX SHUTTERSTOCK

36.     Third-party articles regularly tout the distinctive nature of the WHOOP Wearable and its role in popular culture.  *See, e.g.*, Ex. G (*Wired*) ("In a sea of nearly identical fitness trackers, Whoop stands apart."), (*Medium*) ("the Whoop strap has become the latest status symbol in our wellness-obsessed culture."), (*CNET*) ("You've probably seen this discreet, screenless band on the wrists of sports superstars like Partick Mahomes, Cristiano Ronaldo and Mathieu van der Poel"), (*Independent*) ("One of the hottest products right now is the Whoop strap.  From basketball superstar LeBron James, to the EF Pro Cycling team, the list of VIP users keeps growing – and it's become more talked about than ever …").

37.     Trade dress serves to identify the source of products in the marketplace through exclusive use of distinctive design elements and visual appearance by one specific company – i.e., it allows consumers to identify a product and its source based solely on the design and appearance of the product, rather than any associated trademark use.  WHOOP has achieved this type of source identification and trade dress recognition with its WHOOP Trade Dress, which allows consumers to identify a WHOOP Wearable based on design and appearance alone.

38.     In fact, the WHOOP Trade Dress has become so iconic to WHOOP and beloved in the marketplace that consumers have created their own forums for documenting people wearing the popular WHOOP Wearable based on images and videos.  For example, there is an Instagram page called "Whoop In The Wild," which is "[n]ot affiliated with WHOOP," that is "always on the hunt" for images of public figures wearing the WHOOP Wearable based solely on its use of the WHOOP Trade Dress.  In the majority of the photos and videos posted to this Instagram page, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *See* Ex. E.











14

39.    Similarly, users of the social media platform Reddit have created a sub-thread for "WHOOP sighting[s]" where users post images of athletes and celebrities seen wearing products embodying the WHOOP Trade Dress.  *See* Ex. F.  In the majority of the photos and videos posted to this sub-thread, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below.  *Id.*







40.    As demonstrated by the examples above, the WHOOP Trade Dress serves as a quintessential example of effective trade dress, as its longstanding and exclusive use by WHOOP has created a design form that effectively communicates to consumers the source of the product, allowing consumers to recognize the WHOOP Wearable from a distance as being from WHOOP based on the distinctive, unique design alone.

41.    The WHOOP Trade Dress is instantly recognized, highly sought after by the general public, and a valuable company asset.

<u>**Aurora's Unlawful Infringement**</u>

42.    Upon information and belief, Aurora develops and sells health monitoring wearable devices that has built a segment of its business on copying the WHOOP Trade Dress.

43.    In October 2025, Plaintiff became aware of the product listing on Aurora's website selling knockoff WHOOP Wearables using the WHOOP Trade Dress.  *See* Ex. C.

44.    As seen below, the Infringing Wearables are a wholesale copy of the WHOOP Trade Dress, including use of a continuous band wrapped across the device to create a faceless front and featuring thin metal or metallic accents around the device, including the use of metal accents across the front of the device used to mimic the U-shaped trim on the WHOOP Wearable.

| WHOOP Trade Dress | WHOOP Wearable Embodying the WHOOP Trade Dress | Infringing Wearable representative example |
|---|---|---|
|  |  |  |

45.    The obvious and confusing similarity between the WHOOP Wearable embodying the WHOOP Trade Dress and the Infringing Wearables is amplified when each product is seen as worn on the user's wrist:



*See, e.g.*, Exs. B and C.

46.    In addition to copying the design of the WHOOP Wearable and adopting the WHOOP Trade Dress without authorization from WHOOP, Aurora copied the overall look and feel of the advertising of the WHOOP Wearable, further encouraging consumers to associate the Infringing Wearable with WHOOP and intentionally trading off of the goodwill and reputation WHOOP has built over a decade.

47.    For example, Aurora advertises the Infringing Wearables in connection with images that share a highly similar style with those that WHOOP uses to promote the WHOOP Wearable, representative examples of which from the parties' respective websites are provided below.

| WHOOP images of WHOOP Wearable | Aurora images of Infringing Wearable |
|---|---|
|  | |

[1] Aurora directly copied this image from WHOOP marketing and support materials and uses it without authorization from WHOOP (https://support.whoop.com/s/article/Menstrual-Cycle-Coaching?language=en_US).

| WHOOP images of WHOOP Wearable | Aurora images of Infringing Wearable |
| --- | --- |
|  |  |
|  |  |
|  |  |

| WHOOP images of WHOOP Wearable | Aurora images of Infringing Wearable |
|---|---|
|  |  |

*See* Exs. B–D.

48.    Aurora promotes the Infringing Wearables by highlighting the exact same benefits of the device as WHOOP highlights of the WHOOP Wearable, including copying, nearly word-for word, the advertising of the WHOOP Wearable, as shown below.  The nearly identical marketing language, when combined with Aurora's adoption of the WHOOP Trade Dress and Aurora's adoption of the same style of photography for its promotional materials, further underscores Aurora's intent to create an association in the minds of consumers between WHOOP and the Infringing Wearables in order to confuse consumers, trade on the goodwill and reputation WHOOP has spent a decade developing, and compete unfairly with WHOOP.



*See* Exs. C and I.

**Defendant Refuses to Cease Unlawful Infringement in Response to**
**Cease and Desist Letter Sent Directly to It**

49.    On October 7, 2025, WHOOP sent Defendant a letter, requiring, *inter alia*, that Defendant immediately cease all sale and manufacture of the Infringing Wearables and any other products featuring designs or trade dress that is identical or confusingly similar to the WHOOP Trade Dress.  Ex. A.

50.    WHOOP did not receive a response from Defendant.

51.    Upon information and belief, having intentionally copied the WHOOP Trade Dress in designing the Infringing Wearables in order to gain an unfair commercial advantage by mimicking WHOOP and trading on the goodwill of the iconic WHOOP trade dress, Defendant is well-aware that it is infringing on WHOOP intellectual property.  Additionally, Aurora has been on actual notice that it infringes the WHOOP Trade Dress since WHOOP sent the demand letter to Aurora on October 7, 2025.  Thus, since at least October 7, 2025, Defendant's infringement of the WHOOP Trade Dress has been willful and intentional.

52.    Aurora continues to sell and offer for sale the Infringing Wearables in the United States, despite being put on notice of the trade dress rights owned by WHOOP, which constitutes willful trade dress infringement and unfair competition.

53.    Aurora's continued unauthorized use of the WHOOP Trade Dress in connection with highly similar, yet inferior, products to those offered by WHOOP in connection with the iconic WHOOP Trade Dress will continue to cause consumer confusion and irreparable harm to WHOOP and its goodwill and reputation in the marketplace.

<u>COUNT I</u>
**FEDERAL TRADE DRESS INFRINGEMENT**
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

54.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

55.     The WHOOP Trade Dress is non-functional and distinctive based on, among other things, longstanding extensive and exclusive nationwide use, promotion, marketplace success, and recognition, and was so before Aurora first sold, offered for sale, distributed, advertised, or promoted the Infringing Wearables.

56.     Aurora's use of the WHOOP Trade Dress is without permission or authorization from WHOOP and in willful disregard of the rights of WHOOP to control its intellectual property.

57.     Aurora's unauthorized use of the WHOOP Trade Dress in commerce, as described above, has caused and is likely to cause confusion, mistake, or deception, and is likely to cause and has caused consumers to believe incorrectly that the Infringing Wearables are produced, sponsored, authorized, or licensed by or are otherwise connected to or affiliated with WHOOP.

58.     Aurora's unauthorized use of the WHOOP Trade Dress has harmed and will result in future harm to the reputation of WHOOP and its goodwill in to the continued viability of the WHOOP Trade Dress as an indicator of source in the marketplace.

59.     Aurora's acts are willful, wanton, reckless, and intended to confuse the public and to injure WHOOP.

60.     As a direct and proximate result of the foregoing acts, WHOOP has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

61.     WHOOP is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits, and advantages obtained by Aurora as a result of its infringing acts.

62.     There is no adequate remedy at law that can fully compensate WHOOP for the harm caused by Aurora's infringement, which is ongoing.  Accordingly, WHOOP is entitled to injunctive relief prohibiting Aurora from continuing to infringe the WHOOP Trade Dress or any designs confusingly similar thereto.

**COUNT II**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

63.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

64.     Aurora's use of the WHOOP Trade Dress without consent or authorization from WHOOP constitutes false designation of origin, which has caused and is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Aurora with WHOOP, or as to the origin, sponsorship, or approval of Aurora's goods or commercial activities by WHOOP, in violation of 15 U.S.C. § 1125(a).

65.     Aurora acted unfairly and deceptively against WHOOP by infringing intellectual property rights of WHOOP, including its WHOOP Trade Dress, with the Infringing Wearables and using the Infringing Wearables to compete improperly with WHOOP.

66.     Such conduct by Aurora is likely to confuse, mislead, and deceive Aurora's customers, purchasers, and members of the public as to the origin of Defendant's product and/or the origin of the WHOOP Trade Dress and cause said persons to believe mistakenly that Defendant and/or its products have been sponsored, approved, authorized, or licensed by WHOOP or are in

some  way affiliated or connected with WHOOP, all in violation of 15 U.S.C. § 1125, and constitutes false designation of origin and unfair competition with WHOOP.

67.     Defendant's actions were undertaken willfully with full knowledge of the falsity of such designation or origin and unfair competition.

68.     WHOOP is informed and believes, and thereon, alleges that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's false designation of origin and unfair competition in an amount that is not presently known to WHOOP.  By reason of Defendant's actions constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, false or misleading representations of fact, and unfair competition, WHOOP has been damaged and is entitled to monetary relief in an amount to be determined at trial.

69.     Due to Aurora's actions, WHOOP has suffered and continues to suffer great and irreparable injury for which WHOOP has no adequate remedy at law, and WHOOP is entitled to injunctive relief.

**COUNT III**
**MASSACHUSETTS UNFAIR AND DECEPTIVE TRADE PRACTICES**
*Mass. Gen. L. ch. 93A §§ 2, 11*

70.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

71.     Aurora's appropriation, adoption, and use of the WHOOP Trade Dress on the Infringing Wearables has and is likely to continue to confuse or mislead consumers into believing that Aurora's goods are authorized, licensed, affiliated, sponsored, and/or approved by WHOOP.

72.     The actions of Aurora, as described above, constitute unfair and deceptive business practices within the meaning of Mass. Gen. Laws ch. 93A.

73.     At all times relevant to this action, Aurora has been engaged in trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

74.     Aurora acted unfairly and deceptively by infringing intellectual property rights of WHOOP, including the WHOOP Trade Dress, and using the Infringing Wearable to compete improperly with WHOOP through various online storefronts.

75.     The deceptive, unfair and fraudulent practices set forth herein have been undertaken with knowledge by Aurora willfully with the intention of causing harm to WHOOP and for the calculated purpose of misappropriating the goodwill and business reputation of WHOOP.

76.     Aurora's unfair and deceptive acts took place primarily and substantially in Massachusetts.  WHOOP is headquartered in Massachusetts and has confirmed purchases of the Infringing Wearables to consumers in Massachusetts.

77.     Aurora's acts have caused and will continue to cause irreparable injury to WHOOP, including harm to the business, reputation, and goodwill of WHOOP.  WHOOP has no adequate remedy at law to compensate it fully for the damages that have been caused, and which will continue to be caused, by Defendant's unlawful acts, unless it is enjoined by this Court.

78.     In addition, as a result of Aurora's unfair and deceptive acts, WHOOP has suffered and will continue to suffer monetary damages.

79.     As a result of Aurora's conduct in violation of Chapter 93A, as described herein, WHOOP is entitled to recover actual damages in an amount to be proven at trial, such amount to be doubled or trebled, injunctive relief, and attorneys' fees and costs pursuant to Mass. Gen. Laws ch. 93A.

<u>COUNT IV</u>
**UNFAIR COMPETITION**
*Massachusetts common law*

80.    WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

81.    Aurora acted unfairly and deceptively by infringing intellectual property rights of WHOOP, including the WHOOP Trade Dress and using the Infringing Wearables to compete improperly with WHOOP.

82.    Aurora's unfair and deceptive acts took place primarily and substantially in Massachusetts.

83.    By violating intellectual property rights of WHOOP, Aurora has engaged in unfair competition.

84.    WHOOP has suffered irreparable harm and, absent immediate injunctive relief, will continue to suffer irreparable harm as a result of Aurora's actions. Such harm includes, but is not limited to, the loss of the right of WHOOP to compete fairly in the marketplace and the diversion of sales from WHOOP to Aurora and a lessening of the goodwill associated with WHOOP, which would not have occurred but for Aurora's unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgement against Aurora on each and every claim as set forth above and an award of relief, including the following:

A.    An Order in favor of WHOOP and against Aurora on the claim of trade dress infringement under 15 U.S.C. § 1125(a) that Defendant has infringed the WHOOP Trade Dress.

B.    An Order in favor of WHOOP and against Aurora on the claim of false designation of origin and unfair competition under 15 U.S.C. § 1125.

28

C.  An Order in favor of WHOOP and against Aurora on the claim of unfair competition under Chapter 93A.

D.  An Order in favor of WHOOP and against Aurora on the claim of common law unfair competition.

E.  An Order that Aurora and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, be temporarily, preliminarily, and permanently enjoined and restrained from further acts of infringement of the WHOOP Trade Dress, including:

1.  using the WHOOP Trade Dress or any design features that are confusingly similar thereto;

2.  offering, promoting, or selling the Infringing Wearables and/or any product that uses the WHOOP Trade Dress and/or anything confusingly similar thereto;

3.  representing by any means whatsoever, directly or indirectly, that Aurora or any of its products or activities are associated, connected, or affiliated with WHOOP, and/or sponsored, authorized, or licensed by WHOOP;

4.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above;

5.  falsely designating the origin of Aurora's goods;

6.  unfairly competing with WHOOP in any manner whatsoever;

7.  causing a likelihood of confusion or injuries to the business reputation of WHOOP; and

        8.  aiding, abetting, contributing to, or otherwise assisting anyone in engaging or performing any of the activities referred to in subparagraphs E(1)-(7).

F.  An Order directing Aurora to, within 30 days after the entry of the permanent injunction, file with this Court and serve on the attorneys for WHOOP a report in writing and under oath setting forth in detail the manner and form in which Aurora has complied with the injunction.

G.  An Order directing Aurora to immediately tender to WHOOP all products, advertisements, promotional materials, and/or any other materials and things that contain or bear the WHOOP Trade Dress, and/or anything confusingly similar thereto.

H.  An Order directing Aurora to account for Defendant's profits resulting from its trade dress infringement, false designation of origin, and unfair competition.

I.  An Order awarding WHOOP monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including:

      1.  All profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled;

      2.  All damages sustained by WHOOP as a result of Defendant's acts of trade dress infringement, false designation of origin, and unfair competition; and

      3.  The costs of this action.

J.  An Order adjudging that this is an exceptional case.

K.  An Order awarding WHOOP its attorneys' fees, expenses, and costs incurred by WHOOP in connection with this action pursuant to 15 U.S.C. § 1117.

L. An Order for trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 15 U.S.C. § 1117.

M. An Order awarding pre-judgment and post-judgment interest and costs of this action against Defendant.

N. Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: November 25, 2025                    Respectfully submitted,

*/s/ Joshua M. Dalton*
Joshua M. Dalton (BBO # 636402)
Katherine W. Soule (BBO # 703965)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel.: (617)-341-7700
Facsimile: (617)-341-7701
josh.dalton@morganlewis.com
katherine.soule@morganlewis.com

*Counsel for Plaintiff WHOOP, Inc.*